**In the Matter of MBA POULTRY, L.L.C., Debtor.**

**No. BK00–40122.**

United States Bankruptcy Court, D. Nebraska.

July 13, 2000.

Emmett D. Childers, Omaha, NE, for the Money Store Commercial Mortgage, Inc.

Kevin C. Siebert, Lincoln, NE, for Bird Watchers, L.L.C.

Richard P. Garden, Jr., Lincoln, NE, for American National Bank.

William L. Biggs, Omaha, NE, for Debtor MBA Poultry, L.L.C.

Steven C. Turner, Omaha, NE, for Dapec, Inc.

Stephen M. Cramer, Omaha, NE, for U.S. Small Business Administration.

David J. Koukol, Omaha, NE, for City of Tecumseh.

Joseph H. Badami, Lincoln, NE, for Johnson County.

## *MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This case is before the Court to determine the priority, under Nebraska law, between a construction lien and future advances made under previously recorded deeds of trust. I conclude that the future advances have priority.

### *FACTS*

The facts are not disputed:

1. On June 17, 1998, The Money Store Commercial Mortgage, Inc. (hereinafter "The Money Store") recorded two deeds of trust and construction security agreements. Funds on these loans were disbursed from June 16, 1998 to December 11, 1998, for a total disbursement of $1,813,000 under the deeds of trust.

2. On June 17, 1998, ten minutes after The Money Store's second deed of trust and security agreement were recorded, a Notice of Commencement under NEB. REV. STAT. ANN. § 52–145 (Michie 1995) was filed pertaining to DAPEC, Inc.'s construction project.

3. The Money Store made various future advances of funds under its previously recorded deeds of trust.

4. On January 22, 1999, DAPEC, Inc. (hereinafter "DAPEC") recorded a construction lien under the Nebraska Construction Lien Act, NEB. REV. STAT. ANN. §§ 52–125 *et seq.* (Michie 1995).

DAPEC asserts that its construction lien has priority over the future advances made by The Money Store between the recording of the Notice of Commencement and the recording of the construction lien.

## *LAW*

The applicable statutes are NEB. REV. STAT. ANN. § 52–137 (Michie 1995), regarding recording and attachment of construction liens, and NEB. REV. STAT. ANN. § 52–139 (Michie 1995), dealing with priority of construction liens as against other claims.

Section 52–137 provides in relevant part:

(2) If a lien is recorded while a notice of commencement is effective as to the improvement in connection with which the lien arises, the lien attaches as of the time the notice is recorded .... A notice of commencement is not effective until recording and, after recording, is effective until its lapse.

Section 52–139 provides in relevant part:

(2) Except as provided in subsection (3) of this section, a construction lien has priority over subsequent advances made under a prior recorded security interest if the subsequent advances are made with knowledge that the lien has attached.

(3) Notwithstanding knowledge that the construction lien has attached, or the advance exceeds the maximum amount stated in the recorded security agreement and whether or not the advance is made pursuant to a commitment, a subsequent advance made under a security agreement recorded before the construction lien attached has priority over the lien if:

(a) The subsequent advance is made under a construction security agreement and is made in payment of the price of the agreed improvements;

(b) The subsequent advance is made or incurred for the reasonable protection of the security interest in the real estate, such as payment for real property taxes, hazard insurance premiums, or maintenance charges imposed under a condominium declaration or other covenant; or

(c) The subsequent advance was applied to the payment of any lien or encumbrance which was prior to the construction lien.

NEB. REV. STAT. ANN. (Michie 1995).

## *DISCUSSION*

■ The Nebraska Construction Lien Act governs the priority of construction liens in relation to other real estate lienholders. DAPEC asserts that under NEB. REV. STAT. ANN. § 52–139(2), its construction lien attached, on a retroactive basis, as of the date the Notice of Commencement was filed. Since the construction lien attached as of June 17, 1998, which is prior to dates of the future advances, DAPEC asserts that, as a matter of law, The Money Store made future advances with knowledge that DAPEC's lien attached to the real estate. DAPEC then concludes that its construction lien has priority under § 52–139(2).

DAPEC's syllogistic argument is without merit. At the time The Money Store actually made the future advances, it did not have actual knowledge that the construction lien had attached. At the time the future advances were made, DAPEC had not filed a notice of its construction lien, and the construction lien did not exist. The fact that the priority of the construction lien relates back and attaches as of the time the Notice of Commencement was filed does not support the conclusion that a subsequent filing of a construction lien retroactively imputes knowledge to intervening creditors. The fact is that The Money Store did not have the requisite knowledge at the time it made future advances, and it therefore has priority over the construction lien.

■ I conclude The Money Store's loans have priority over DAPEC's construction lien. At the time The Money Store made

its disbursements it did not have actual knowledge of the construction lien filed by DAPEC. Furthermore, at the time the advances were made, the construction lien did not exist.

The Nebraska statutory scheme for construction liens differentiates between notice of commencement, attachment, and knowledge. NEB. REV. STAT. ANN. § 52–139 governs priority of construction liens versus other claims, and subparagraph (2) allows priority for a lien over advances made under prior recorded security interests if the lender made the advances knowing the lien has attached. NEB. REV. STAT. ANN. § 52–137 covers attachment of construction liens, providing that liens recorded after a notice of commencement has been filed are deemed to relate back and attach as of the time the notice was recorded.

DAPEC's position is premised on the statutory interpretation that when a lien is filed under a notice of commencement and the lien attachment date relates back to the date the notice of commencement was filed, knowledge of the construction lien in § 52–139(2) is retroactively imputed to The Money Store. Under DAPEC's reading, constructive knowledge of DAPEC's construction lien would mean the disbursements made by The Money Store after the notice of commencement was filed would be subject to the intervening priority of DAPEC's construction lien.

■ The statutory scheme of the Construction Lien Act does not lend itself to this interpretation. The Money Store received knowledge of the construction lien when the construction lien was filed. While attachment relates back to the date a valid notice of commencement was filed, knowledge of a construction lien does not. If the Nebraska Unicameral had intended constructive knowledge of a construction lien to be imputed to the time a notice of commencement was filed, it would have so stated. In fact, a scheme containing such a relation-back provision would have sim-

plified the priority structure of the Construction Lien Act.

Moreover, adoption of DAPEC's interpretation of the Construction Lien Act would be commercially unworkable. Construction lenders such as The Money Store would be under unduly burdensome requirements to acquire releases and information on those furnishing supplies and construction labor after a notice of commencement was filed. Under a more workable reading of the statute, the filing of a notice of commencement simply puts pre-existing lenders on notice that their future advances will be junior in priority to construction liens recorded before a future advance is made. Thus, such a lender may make future advances and be assured of priority under § 52–139 provided that no construction lien is recorded before a future advance is made.

DAPEC also suggests that if the advances are made for ancillary purposes, they lack priority. In other words, NEB. REV. STAT. ANN. § 52–139(3) provides that notwithstanding the lender's knowledge of a construction lien's attachment, an advance made pursuant to a security agreement recorded before the lien attached has priority if it is made (a) under a construction security agreement for payment of the price of the agreed improvements, or (b) for the reasonable protection of the security interest in the real estate, or (c) for the payment of any lien prior to the construction lien.

DAPEC asserts that some of the advances were used to pay legal fees, interest, and loan fees, among other things. As such, DAPEC argues, the priority of these advances is not protected. That argument, however, does not apply in these circumstances. Rather, it applies only in those situations where the lender knows of the lien and advances money anyway. In that case, the lender would have priority only if the advances were made for the limited purposes outlined in § 52–139(3). Here, The Money Store had no knowledge

that the lien attached, so all of its advances take priority over DAPEC's lien.

IT IS THEREFORE ORDERED that the interest in the real estate, proceeds, and property of the estate that DAPEC asserts by virtue of its construction lien is junior in priority to any and all future advances made by The Money Store prior to the filing of the notice of commencement, as well as all advances made between the time of the filing of the notice of commencement and the filing of the notice of construction lien.